IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK J. MANGAN          :          CIVIL ACTION
                           :
          v.               :          No. 06-3204
                           :
PAUL R. BRIERRE, et al.    :

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                    **February 9, 2007**

  Patrick J. Mangan asks this Court to find the process by which the Pennsylvania Department of Environmental Protection investigated and remediated chemical contamination on his farm violated his rights to due process and property. The Department[1] argues *Rooker-Feldman*[2] deprives this Court of jurisdiction. After consdiering the state court judgment, I find I retain jurisdiction to consider the merits of Mangan's Complaint, but find Mangan has failed to state any cause of action upon which relief may be granted.

**FACTS**[3]

  In 1986, Mangan purchased a 155-acre dairy farm, including a barn storing pesticides,

---

[1]All of the named defendants were employees of DEP, except Anthony Malinowsky, who purchased the farm at tax sale.

[2]The *Rooker-Feldman* doctrine is derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 41 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker,* the plaintiff attempted to bring his case in district court rather than appealing a state court judgment to the state's appellate courts. In *Feldman*, the litigants asked a federal district court to find the judgment of the District of Columbia Court of Appeals deprived them of a property right. The Supreme Court held their Fifth Amendment claims were inextricably intertwined with the state court decision; thus, the federal court was without jurisdiction.

[3]When considering a Motion to Dismiss, I accept all allegations in, and reasonable inferences from, the Complaint as true and view them in the light most favorable to Mangan. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989). In addition to Mangan's Amended Complaint, I derived facts from the trial court opinion. *Commonwealth of Pennsylvania, Department of Environmental Protection v. Mangan*, No. 48-cv-2000008279 (Northampton County Court of Common Pleas, March 7, 2002).

herbicides, and fertilizers.  In 1998, Mangan sold part of the farm, including the storage barn.  As a condition of sale, the purchaser required Mangan to remove the stored materials.  Mangan spread the stored fertilizer on his remaining fields.  After neighbors alleged Mangan was using a backhoe to dump chemicals on his property, Stephen Puzio, a Solid Waste Specialist from the Pennsylvania Department of Environmental Protection (DEP), investigated.  Two days later, on July 15, 1998, Dean Fisher, another Solid Waste Specialist employed by DEP, entered the farm and removed a fertilizer bag and two samples of fertilizer from Mangan's farm.   The DEP investigation revealed the presence of toxaphene, a hazardous substance under Section 103 of Pennsylvania's Hazardous Sites Cleanup Act (HSCA), 35 P.S. § 6020.103.[4]  The U.S. Environmental Protection Agency banned toxaphene in 1990.  40 C.F.R. § 302.4; 55 Fed. Reg. 31164-01, 31165 (July 31, 1990).

On September 2, 1998, DEP issued a search warrant and an Administrative Order to allow DEP agents access to the farm.  A day later, DEP executed the warrant and seized soil samples and samples of pesticides, herbicides, and fertilizers.  The samples contained toxaphene, lindane, alachlor, and fonofos, all hazardous substances under Section 103.  In September and October, 1998, DEP removed the contaminated soil.  Mangan disturbed the excavation site with heavy equipment, jeopardizing the remediation efforts, and then in December, 1998, denied DEP access to the site.

---

[4]Act of October 18, 1988, P.L. 736, as amended.  Under Section 103, hazardous substances are defined, in relevant part, as:

> (1) Any element, compound or material which is:
>> (i) Designated as a hazardous waste under the act of July 7, 1980 (P.L. 380, No. 97), known as the Solid Waste Management Act, and the regulations promulgated thereto.
>> (ii) Defined or designated as a hazardous substance pursuant to the Federal Superfund Act.
>> (iii) Contaminated with a hazardous substance to the degree that its release or threatened release poses a substantial threat to the public health and safety or the environment as determined by the department. . . .

35 P.S. § 6020.103

In response, Paul R. Brierre, an Assistant Counsel for DEP, filed an emergency petition in the Court of Common Pleas for Northampton County, Pennsylvania, seeking judicial enforcement of the Administrative Order to gain access to the site.  On June 23, 1999, the Northampton County Court of Common Pleas granted DEP unconditional access to Mangan's property.  DEP conducted additional sampling and excavation before completing its response on October 8, 1999.

In an undated letter on DEP letterhead, Ed Werkheiser wrote to a real estate agent offering to buy the farm for $85,000 on the condition Mangan install a well and guarantee potable water from the well.  Mangan did not accept the offer.

In October, 2000, Sean L. Robbins, an Assistant Counsel for DEP, filed a writ of summons and a praecipe for a notice of *lis pendens* against Mangan's farm in Northampton County Court.  On March 12, 2001, Defendants Brierre and Robbins, on behalf of DEP, filed the complaint against Mangan in the Northampton County Court under Sections 301 and 507 of the HSCA, 35 P.S. §§ 6020.305 and 6020.507, seeking reimbursement from Mangan as the responsible person.  Mangan filed preliminary objections to DEP's complaint and a counterclaim alleging:

| | |
|---|---|
| Count I: | DEP violated the takings clauses of the state and federal constitutions when it took his topsoil; |
| Count II: | DEP violated the HSCA when it took his topsoil; |
| Count III: | DEP's notice of *lis pendens* depressed the farm's value in violation of the Fifth and Fourteenth amendments to the U.S. Constitution; |
| Count IV: | DEP's notice of *lis pendens* deprived Mangan of three bona fide sales of the farm in violation of the Fifth and Fourteenth amendments to the U.S. Constitution; |
| Count V: | DEP employee Dean Fisher trespassed on July 15, 1998 when he took soil samples  from the farm; |
| Count VI: | Mangan justifiably relied on the authorization by DEP employee Stephen Puzio to continue spreading fertilizer on July 15, 1998; |

Count VII: DEP and Elk Environmental Services Inc. spilled carcinogenic silica on the farm;

Count VIII: DEP's notice of *lis pendens* violated Mangan's substantive and procedural rights to due process;

Count IX: DEP's notice of *lis pendens* unlawfully interfered with Mangan's contractual relations by preventing him from conveying clear title;

Count X: DEP's notice of *lis pendens* caused trade libel against the land;

Count XI: DEP's notice of *lis pendens* was an abuse of process;

Count XII: DEP's notice of *lis pendens* was a wrongful use of civil proceedings under 42 Pa.C.S. § 8351;

Count XIII: DEP's notice of *lis pendens* constituted a conversion of the land;

Count XIV: DEP's notice of *lis pendens*, removing the topsoil, and spilling the silica were negligent; and,

Count XV: DEP's notice of *lis pendens* was designed to cloud Mangan's title and force him into tax sale.

In ruling on Mangan's preliminary objections, the Northampton Court found Counts V, VI, VII, IX, X, XI, XII, XIII, XIV, and XV related to actions within the jurisdiction of the DEP and for which DEP and it agents were entitled to sovereign immunity under 1 Pa. C.S. § 2310.[5]  On the remaining six counts, the trial court held DEP's remediation was not an unconstitutional taking but was a permitted activity under the Commonwealth's police power in Count I, the HSCA provided authority for the cleanup contrary to Count II, Pennsylvania allows commencement of an action by

---

[5] Section 2310 provides in relevant part:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. . . .

1 Pa.C.S. § 2310

writ which the *lis pendens* properly noticed and the imposition of a *lis pendens* is not a taking, citing

*United States National Bank in Johnstown v. Johnson*, 487 A.2d 809, 812 (Pa. 1985), Counts III and

IV.  The trial court ruled Count VIII, in which Mangan alleges a due process violation, failed because

regulation under the police power is due process.  *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 314

(Pa. 1995).

In a second opinion after disposing of the preliminary objections, the trial court entered the

following order:

> AND NOW, this 7th day of January 2005 the Plaintiff's Motion for Summary
> Judgment is **GRANTED**.  Defendant is a *responsible person* within the meaning of
> the Hazardous Sites Cleanup Act, 75 Pa.C.S.A. § 6020.701 and liable for any costs
> that may be recoverable under the Act.  The amount of costs recoverable may be
> listed for a non-jury trial.  There are no other remaining issues in this case.

Com. Ex. 13.

On appeal, the Commonwealth Court upheld the trial court's decision, reasoning Mangan

was a responsible person liable for cleanup costs under the Act.  The court found Mangan waived

the issues of preemption by the Federal Insecticide, Fungicide and Rodentcide Act, 7 U.S.C. §

136v(b) and the offer by DEP employee Werkheiser to buy the property at a distressed price by

failing to raise them in the trial court.[6]  The Pennsylvania Supreme  Court denied Mangan's petition

for allowance of appeal and his subsequent motion for reconsideration of that decision.  Mangan

appealed to the United States Supreme Court, which denied his writ of certiorari on November 27,

2006.  *Mangan v. Pennsylvania Dept. of Environmental Protection*, 127 S.Ct. 678 (2006).

Mangan filed a Complaint and then an Amended Complaint in this Court which recites the

facts by which he feels aggrieved, but does not set out specific counts or causes of action.  The

---

[6]Mangan raised the question of preemption in his preliminary objections to DEP's Complaint in
Northhampton County Court.  Com. Ex. 9 at 7.  The trial court overruled his preliminary objections
on June 29, 2001.  Com. Ex. 12 at 19.

gravamen of his complaint is that DEP's *lis pendens* made it impossible for him to borrow against or sell his farm at fair market value. Because he was unable to borrow or sell his farm, Mangan did not have enough money to pay his taxes; therefore, Mangan reasons, DEP caused his farm to be sold at tax sale. In his prayer for relief, Mangan asks this Court to:

- Order the purchaser at tax sale to reconvey the farm to him;

- Enter a declaratory judgment the *lis pendens* "created a false, fraudulent, and illegal pre-judgment cloud" on Mangan's title to his farm;

- Enter a declaratory judgment the Commonwealth's right to remediate the application of fertilizers is preempted by the Federal Insecticide, Fertilizer, Rodentcide Act (FIFRA), 7 U.S.C. § 136v(b);

- Enter a declaratory judgment Dean Fisher's July 15, 1998 entry onto the farm was a warrantless search in violation of the Fourth Amendment;

- Award compensatory and punitive damages.

Mangan's claims are also set out in his response to the DEP's Motion to Dismiss. There he argues DEP violated his right to due process in the imposition of the *lis pendens*, brought its complaint against him in the wrong court,[7] violated his right to equal protection,[8] committed a takings violation when imposing the *lis pendens*, and conspired against him.

---

[7]The legislature authorized DEP to bring actions either in the courts of common pleas or in the Commonwealth Court. 35 P.S. § 6020.507 (a) (providing "[t]he department, a Commonwealth agency, or a municipality which undertakes to abate a public nuisance under this act or take a response action may recover those response costs and natural resource damages in an action in equity brought before a court of competent jurisdiction."). This issue requires no more attention.

[8]Mangan has made no claim of discrimination, even were he a class of one, sufficient to state a claim for equal protection. The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Thomas v. Independence Tp.*, 463 F.3d 285, 297 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996), and *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding "a successful equal protection claim[ ] [may be] brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.")).

**DISCUSSION**

This Court may only grant a Rule 12(b)(6) motion "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *D.P. Enter. Inc. v. Bucks County Cmty. Coll.,* 725 F.2d 943, 944 (3d Cir. 1984). The DEP employee defendants move under both Rule 12(b)(1) and alternatively under Rule 12(b)(6) for dismissal, arguing either this Court is without jurisdiction to hear Mangan's case or he has failed to state a cause of action on which relief may be granted. Mangan in his reply reiterates all the wrongs he asserted in state court. This Court holds the allegations of a *pro se* litigant to a "less stringent standard" than formal pleadings prepared by a lawyer. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir.2003) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

DEP argues *Rooker-Feldman* deprives this Court of jurisdiction. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts . . . possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction."); *see also U.S. v. Cooper*, 437 F.3d 324, 339 (3d Cir. 2006). *Rooker-Feldman* is shorthand for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970). The statutory foundation of *Rooker-Feldman* is 28 U.S.C. § 1257 which states, in relevant part, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . ." 28 U.S.C. § 1257; *see also Parkview Associates Partnership v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000).

The continued viability of *Rooker-Feldman* is under fire. *See Lance v. Dennis*, 126 S.Ct.

1198, 1201 (2006)(collecting cases).  The Supreme Court has confined the doctrine to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 280 (2005).  The alleged federal injury must be caused by the state court judgment itself. *Exxon*, 544 U.S. at 284. *Rooker-Feldman* is not implicated simply because a party brings to federal court a matter it previously litigated in state court.  *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 329 (3d Cir. 2000) (asserting that *Rooker-Feldman* is not a jurisdictional version of preclusion).  "If a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," then *Rooker-Feldman* does not bar jurisdiction.  *Exxon*, 544 U.S. at 293 (internal citation omitted).

In this case, *Rooker-Feldman* does not bar this Court's jurisdiction because none of Mangan's prayers for relief challenges the finding Mangan is a responsible person liable for cleanup costs under the Hazardous Sites Cleanup Act, 75 Pa.C.S. § 6020.701.

*Rooker-Feldman*, before *Exxon Mobil*, also prevented courts from reviewing questions which were "inextricably intertwined" with state court judgments.  "If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding . . .  , then the district court is in essence being called upon to review the state-court decision. This the district court may not do."  *Feldman*, 460 U.S. at 483-84 n.16.  This Court's jurisdiction in the present case depends on whether "inextricably intertwined" is a viable analysis after *Exxon Mobil*.  The Third Circuit considered whether a federal complaint was inextricably intertwined with the state court decision after *Exxon Mobil*; the resolution of the case, however, did not depend on the "inextricably intertwined" analysis. *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d

181, 192-93 (3d Cir. 2006) (holding property owners' due process claims did not turn on the question raised in state court as to whether a zoning hearing board abused its discretion.); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006) (holding *Rooker-Feldman* did not bar a complaint which raised federal claims attributable to defendants' alleged violations before the state court judgment).[9]

Mangan's prayers for relief in this Court are inextricably intertwined with the state court's decision on the department's preliminary objections to Mangan's counterclaims and as such would have been barred by *Rooker-Feldman* before *Exxon Mobil*.  Under *Exxon Mobil*, I must compare Mangan's prayers for relief with the state court judgment which found him to be a responsible person

---

[9]Other circuits have generally found a  continued vitality to the jurisdictional bar to questions which are inextricably intertwined with state court decisions. The Fourth Circuit explained "[u]nder *Exxon*, . . . *Feldman's* 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006).  The Second Circuit held in an unpublished decision after *Exxon Mobil, "*The procedural defects that plaintiff alleges are, in fact, inextricably intertwined with the substantive decisions of the state court. . . . inextricably intertwined with the state court's judgment, and thus, outside our subject matter jurisdiction." *Edem v. Spitzer*, 2006 WL 3228792, *2 (2d Cir. 2006); *see also Washington v. Wilmore*, 407 F.3d 274, 279-80 (4th Cir. 2005) (holding "[t]he *Rooker - Feldman* doctrine bars lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court); *Ignacio v. Judges of U.S. Court of Appeals for Ninth Circuit*, 453 F.3d 1160, 1165 (9th Cir. 2006) (holding "[t]he doctrine also precludes constitutional claims that are 'inextricably intertwined' with the forbidden appeal."); *Tal v. Hogan* 453 F.3d 1244, 1256 (10th Cir. 2006) (finding a complaint challenging the constitutionality of the state law not inextricably intertwined with the state court judgment).  Only the Sixth Circuit has read *Exxon Mobil* more narrowly and allowed a case to go forward which presented a separate federal question, overruling the district court which had rejected a facial challenge to the state court recusal rule on grounds the challenge was inextricably intertwined with the final judgments of the state supreme court. *Fieger v. Ferry*, 471 F.3d 637, 641 (6th Cir. 2006); *see also McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir.2006) (explaining "[i]n *Exxon*, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase 'inextricably intertwined' to extend *Rooker-Feldman* to situations where the source of the injury was not the state court judgment").

liable for damages under 75 Pa.C.S. § 6020.701.  When I do so, I find the relief he seeks in this Court does not require reconsideration of the state court judgmeent, but is a federal challenge to the process involved in adjudicating him responsible for the hazardous site cleanup.  Therefore, this Court has jurisdiction to consider the merits of Mangan's claims and the Department's Motion to Dismiss.

As the Court explained in *Exxon Mobil*, a district court is not divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.  544 U.S. at 292 (holding "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . .  then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.") (citations omitted).  A federal court may be bound by state preclusion law, but preclusion is not a jurisdictional bar.  *See Wade v. City of Pittsburgh*, 765 F.2d 405, 408 (3d Cir. 1985).  I must give the same preclusive effect to the judgment as the courts in Pennsylvania, the state in which the judgment was entered, would give.  *See Lance*, 126 S.Ct. at 1202; *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3d Cir.1994).  In Pennsylvania, *res judicata*:

> bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. *Res judicata* applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

*Balent*, 669 A.2d at 313 (citation omitted).  To find *res judicata*, Pennsylvania courts require the two actions share: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued.  *Turner*, 449 F.3d at 547-48.

When I examine Mangan's counterclaim in state court to determine whether *res judicata*[10]

applies, I find the two actions share several of the same issues on the same grounds between the

same parties in the same capacity.  *Turner*, 449 F.3d at 547-48.  The state court has ruled on all but

two  of Mangan's issues and found each without merit.   In his state court counter-claim, Mangan

brought fifteen counts challenging the *lis pendens* on common law, statutory and constitutional

grounds.   In this Court, Mangan challenges the *lis pendens* and other actions of the Department as

unconstitutional.  I could not grant Mangan's prayers for relief regarding the *lis pendens* without

doing violence to the decision in state court.  *Lance*, 126 S.Ct. at 1202.  Mangan has stated no facts

on which this Court could fashion a cause of action which would permit me to order the purchaser

at tax sale to reconvey the farm to him, enter a judgment the *lis pendens* illegally impacted Mangan's

title to his farm, or find Dean Fisher's July 15, 1998 entry onto the farm was a warrantless search

in violation of the Fourth Amendment.  The state court in its March 7, 2002, decision amply and ably

considered each of these issues on its merits and denied each claim. Com. Ex. 12.

The two issues the Commonwealth Court found waived, the question of FIFRA preemption

of HSCA and the effect of Werkheiser's offer to buy the farm, do not create a cause of action here.

FIFRA[11] is the federal component of a tripartite scheme in which pesticides are regulated at the

---

[10]*Res judicata* is analogous to the federal concept of claim preclusion. *See Wade v. City of Pittsburgh*, 765 F.2d 405, 408 (3d Cir.1985).  Both claim and issue preclusion serve the same policy goals of conservation of judicial resources, fostering reliance on judicial action, and avoidance of the expense and vexation accompanying multiple lawsuits. *See E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 492 (3d Cir.1990); *see also In re Continental Airlines*, 279 F.3d 226, 233 (3d Cir.2002) (claim preclusion bars reconsideration of the "very same claim" decided in prior judgment, while issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved" in a prior proceeding).

[11]Section 24 of FIFRA provides in pertinent part:
    (a) In general - A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act.

federal, state, and local levels. *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 615 (1991)

(holding "FIFRA implies a regulatory partnership between federal, state, and local governments.").

A pesticide may generally not be sold or used in the United States without an EPA registration.  7

U.S.C. § 136a(a). States may regulate or even ban the sale and use of a federally registered pesticide.

7 U.S.C. § 136v(a).  Federal pesticide regulations establish a floor, but do not preempt state

regulation.  *Mortier*, 501 U.S. at 615.

The Commonwealth defendants alternatively argue Mangan's allegation they conspired with

the innocent buyer to deprive him of his property under color of state law is without merit.  I agree

because the Commonwealth defendants are entitled to immunity and the innocent buyer did not act

under color of state law.

Prosecutors acting in their official capacity are entitled to absolute immunity and DEP

counsel are prosecutors when they file actions to enforce compliance with court orders.  *Light v.*

*Haws*, 472 F.3d 74, 78 (3d Cir. 2007).  In *Light*, the regulated farmer alleged malice in regulatory

steps taken by an assistant counsel at DEP.  The Third Circuit reasoned motive was irrelevant to

absolute immunity.  *Id.* at 80.  In this case, Defendants Brierre and Robbins, the DEP assitant

counsels who filed the court actions against Mangan, are entitled to absolute immunity under *Light.*

Also absolutely immune is William F. McDonnell, regional director of the Northeast regional Office

of DEP, who issued an Administrative Order in September, 1998 to allow DEP employees access

to the farm to investigate.  McDonnell's action is authorized by statute[12] and his role is quasi-

---

7 U.S.C. § 136v.

[12]Section 501 of the HSCA provides:
> (a) General rule.--Where there is a release or substantial threat of release of a contaminant which presents a substantial danger to the public health or safety or the environment or where there is a release or threat of a release of a hazardous substance, the department shall investigate and, if further response action is deemed

judicial, entitling him to absolute immunity.  Under the statute, to issue an access order McDonnell need only find there was a "release or substantial threat of release of a contaminant which presents a substantial danger to the public health or safety or the environment or where there is a release or threat of a release of a hazardous substance."  35 P.S. 6020.501.

When prosecutors act as investigators they are entitled only to qualified immunity.  *Light*, 472 F.3d at 80.  Department employee Fisher, who investigated the contamination of the farm, is entitled to qualified immunity. Qualified immunity is intended to shield government officials performing discretionary functions "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Before granting or denying qualified immunity, this Court must ask if the conduct violated a clearly established constitutional right. *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001).  "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002).  Mangan has not contested the underlying claim that there was a release of hazardous substances on his property.  Under the HSCA, the Commonwealth is required to take action. 35 P.S. 6020.301.  Fisher entered Mangan's property with a warrant and with statutory authority; therefore, his conduct did not violate a constitutional right.  He is entitled to qualified immunity.  The four Commonwealth defendants also are entitled to sovereign immunity

---

appropriate, the department shall notify the owner, operator or any other responsible person of such release or threat of a release if such persons are known and may allow such person or persons to investigate and undertake an appropriate response, or may undertake any further investigation, interim response or remedial response relating to the contaminant or hazardous substance which the department deems necessary or appropriate to protect the public health, safety or welfare or the environment.

35 P.S. § 6020.501

from any state law claim buried in Mangan's recitation of the facts. 1 Pa.C.S. § 2310.

Finally, I turn to Defendant Ed Werkheiser, the employee of the Department of Environmental Protection, who made an offer to buy Mangan's farm. An opportunistic odor surrounds the offer but, the offer was rejected and there is no suggestion Werkheiser was acting under color of state law. Thus, Mangan's claim against Werkheiser fails to state any ground for relief under section 1983. Similarly, Mangan's claim against Malinowsky would fail because Malinowsky, as the innocent buyer, was not operating under color of state law and no set of facts could make him liable under section 1983 or 1985. After a tax sale is confirmed, it may be overturned only for lack of notice. 72 P.S. § 5860.607(g);[13] *Property of Cont'l Motels, Inc.*, 379 A.2d 897, 899 (1977). Mangan has offered no allegation Malinowsky is other than an arm's length purchaser. *Poffenberger v. Goldstein*, 776 A.2d 1037, 1042 (Pa. Commw. 2001) (holding a bona fide purchaser is one who pays valuable consideration, has no notice of the outstanding rights of others, and acts in good faith); *see also Carnegie Natural Gas Co. v. Braddock*, 597 A.2d 285, 288

---

[13] In relevant part, Section 607 provides:

> (g) If no objections or exceptions are filed or if objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, shall not thereafter be inquired into judicially in equity or by civil proceedings by the person in whose name such property was sold, by a grantee or assignee, by any lien creditor or by any other person, except with respect to the giving of notice under the act, to the time of holding the sale, or to the time of petitioning the court for an order of sale. There shall be no period of redemption after such sale and the sale shall be deemed to pass a good and valid title to the purchaser, free from any liens or encumbrances whatsoever, except such liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff's deed.

72 P.S. § 5860.607(g)

(Pa. Commw. 1991).[14]

The Commonwealth defendants, in an excess of caution, raise several other grounds on which this Court could grant their motion to dismiss. They effectively argue the Eleventh Amendment protects them from suit in their official capacities. *Board of Trustees of the Univ. Of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). By statute, Pennsylvania has withheld consent to be sued. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

The relevant statutes of limitation bar Mangan's action in this case. The statue of limitation for a 1983 action is that of the state's tort law. *City of Rancho Palos Verdes v. Abrams*, 471 U.S. 261, 275-76 (2005). Pennsylvania's statute of limitations for personal injury actions is two years. 42 Pa.C.S. § 5524. All of the wrongs Mangan alleges, from the first entry on his land in 1998, to the notice of *lis pendens* in 2000, to the tax sale in 2001, happened more than two years before this suit was filed on July 21, 2006. Any remedy under 1983 for each of the wrongs is time-barred.

In sum, *Rooker-Feldman* does not deprive this Court of jurisdiction, but several of Mangan's complaints are barred by issue preclusion. The Eleventh Amendment bars suit against the Commonwealth defendants in their official capacities. The Commonwealth defendants in their individual capacities are entitled to absolute immunity as to Brierre, Robbins and McDonnell. Fisher is entitled to qualified immunity. Mangan has failed to state any set of facts under which Werkheiser or Malinowsky could be seen to have acted under color of state law. Even without the foregoing,

---

[14]A purchaser at tax sale, purchases a property subject to the risk that if, within ten days following purchase, a petition were filed to set aside, and if that petition demonstrated any proper reason, the sale would be set aside. *Merrill Lynch Mortg. Capital v. Steele*, 859 A.2d 788, 792 (Pa. Super. 2004). After a sale is confirmed, he becomes a bona fide innocent purchaser for value. *Janus Management Services, Inc. v. Schlessinger*, 810 A.2d 637, 638 (Pa. Super. 2002) (holding "it is not enough to know that there is a claim against a property to disqualify one from being a bona fide purchaser for value.").

the two-year statute of limitations for section 1983 actions in Pennsylvania would bar Mangan's action.  For those reasons, I will grant the Commonwealth defendants' motion to dismiss under Rule 12(b)(6) and will entertain a similar motion from Malinowsky when it is filed.

An appropriate order follows.